[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 49, and the defendant husband, 54, married on May 21, 1983 in Stamford, Connecticut. The court has jurisdiction based on the plaintiff's continuous residence in this state for at least one year prior to starting this action for dissolution of marriage and other relief. No child has been born since the marriage. The court finds that the marriage has broken down irretrievably.
The plaintiff graduated from the University of Connecticut in 1968 with a B.A. in English. When she first met the defendant she was Sales Manager for Prince Corporation, a company operating a group of five hotels, which position terminated prior to the marriage. The plaintiff did not return to work until 1989 when she began part-time sales with Lord Taylor. In that year she suffered a fall at an AP store which disabled her for several months. She brought a claim and eventually settled the case for $18,000.00, netting $9,000.00 after fees and expenses. In 1990 the plaintiff began a new career in child care. She works for the Putnam Indian Field School camps and is now Director of the Old Greenwich/Riverside Community Center. From the latter she is paid for 42 weeks, receiving $525.00 net every two weeks. During the summer, the summer camps pay between $15.00 to $18.00 per hour. The plaintiff owned a Fiat Auto, furniture, jewelry, and her clothes when she married the defendant.
The defendant, who left school at 14 to work in a hotel, left Ireland at 17 for England where he worked at various jobs until 1962 when he immigrated to the United States of America. He became a citizen five years later. Once here he found various jobs. Opportunity came when he began work for Shamrock Maintenance where he remained for 13 years during which he was assigned to the Continental Oil Building. After Conoco moved, the new owner, Schwepps, hired the defendant to manage the building. This occurred around the time of his marriage to the plaintiff. His responsibilities increased over the following years until he is now Facilities Manager for Cadbury Beverages earning a weekly gross of $1,213.46 and $883.00 net disposable income weekly after mandatory deductions. In addition, he is furnished a company car of which he CT Page 98 has unlimited use, paid for by the company except for personal gasoline used. He has family medical insurance with Aetna for himself and the plaintiff and group life costing the defendant $34.73 weekly which the court is treating as a mandatory deduction in arriving at net disposable income.
The defendant had purchased a house shortly before the marriage which was occupied at the marital home until 1984 when the present marital home was purchased for $135,000.00 by rolling the sales proceeds of $60,000.00 into the new home and mortgaging the remainder. The mortgage has been refinanced three time, presently having a balance of $75,727.00 for a 15 year term at 7 1/2% interest with eleven years remaining. The parties have stipulated that the current fair market value is $231,500.00. There is also a second mortgage currently having a balance of $24,640.00. The plaintiff contributed "sweat equity" in improving both houses which the court credits in arriving at its orders.
The parties' marriage slowly eroded, the plaintiff attributing the defendant's work and recreational running and the defendant attributing the plaintiff's lack of attention as evidenced by frequent visits away from home. The parties separated in September, 1994, and this action was brought by complaint dated October 6, 1994. The defendant had asked for a divorce in July 1993.
The plaintiff described several health problems, none which the court finds to be disabling. The defendant enjoys good health.
The plaintiff drew $30,000.00 in 1993 on the equity credit second mortgage, purchasing a 1986 Jaguar for $14,000.00. She put $12,000.00 in a C.D. in joint ownership with her sister (Defendant's Exhibit C). She kept cash in a safety deposit box for several months. She maintained a joint account at Putnam Trust Company with her sister. Just prior to trial she paid two credit cards $2,500.00 each, paid her attorney $2,000.00 and paid $2,000.00 for her share of a family party. For his part, the defendant put $8,000.00 in a drawer in his house, claiming at one point only $2,000.00 was left and at another point that some of the money was committed but not spent. The court has concluded that these actions of the parties simply demonstrate the deep distrust that now exists between them which the court finds as impairing their respective credibility.
Having reviewed the evidence in light of the statutory CT Page 99 criteria, the court enters judgment dissolving the marriage on the ground of irretrievable breakdown with the following orders.
 1. The defendant shall retain the real estate known as 141 Sundance Road, Stamford, as his sole property assuming the present mortgages, holding the plaintiff harmless and indemnified.
 2. The defendant shall pay to the plaintiff sum of $17,500.00 on or before March 31, 1996. A mortgage shall be given by the defendant to secure the payment.
 3. The plaintiff shall retain the Jaguar as her sole property.
 4. The plaintiff shall retain his IRA # 037-0795028-01, (cf. Plaintiff's Exhibit #4).
 5. The plaintiff is awarded the defendant's IRA # 038-0775505-03, (cf. Plaintiff's Exhibit #4).
 6. The plaintiff is awarded the sum of $15,000.00 as her share of the defendant's Cadbury Beverages, Inc. Employee Savings Incentive Plan which is ordered to be set over into her name, by QDRO if necessary.
 7. The defendant shall be solely responsible for paying the balance due People's Bank Visa/Mastercard.
 8. Each party shall prepare a list of the various items constituting the contents of the marital home, including items on premises or removed. Any items in dispute shall be submitted to the court via an articulation after hearing.
 9. The defendant shall pay weekly periodic alimony to the plaintiff in the sum of $200.00 (?) until the remarriage of the plaintiff, either party's death, further court order or December 31, 1999 which term is ordered to be non-modifiable per Section 46b-86(a) of the Connecticut General Statutes. A wage withholding order is entered pursuant to statute. A hearing shall be held if the plaintiff will not agree to a contingent withholding.
CT Page 100
10. The fund presently in escrow per court order is ordered released to the plaintiff to assist her in defraying her litigation expenses.
11. The plaintiff may resume her family name of Campbell if she so wishes by including such order in the judgment file.
12. The defendant shall take no action which adversely affects the plaintiff's rights to continued medical coverage per COBRA.
13. Counsel for the plaintiff is directed to draft the judgment file.
HARRIGAN, J.